Case No. 15-7128 at L. Joshua Fuller at L. Wayne Nelson, Appellant. Gerald Burton at L. v. DC. Mr. Burton for Appellant Burton. Mr. Nelson for Appellant Nelson. Ms. Rucker for Appellant Raiford at L. Mr. Temple for Appellant Addo. And Ms. Johnson for the appellee. Good morning, your honors. My name is Gerald Burton. I respectfully request to reserve 30 seconds for rebuttal. The trial judge got it wrong by stepping over the facts during summary judgment. Stating that I was not a proper comparator to the other individuals is not true. Page 464B in Article I states that all sworn employees, through the rank of captain, are covered under the CBA. I treat it the same. The statement I only advance one sergeant is incorrect. I showed at least two. Page 1793, 1794, 1829, and 1831. The court also got it wrong about the overtime. On page 1765, 1766, it shows the other member working overtime in the same pay period. I mentioned the Wang case. It refused to even consider evidence of employee wrongdoing. Specifically, it ignored the agency's decision that Wang had performed below the agency's legitimate expectation. I referenced the Maestro case. The court should not grant summary judgment because the reasonable jury could have concluded the agency's assessment of the case was inquired, called it by discrimination. In fact, a circuit court just recently reiterated that whether two employees who are similarly situated is ordinarily a question for effect for the jury. White, citing Wheeler at 812F3. On page, I'm sorry. If all the compared evidence failed, the case was not doomed. This very court, the Court of Appeals, in the Wang case. For all the reasons I've stated above, the summary judgment should be reversed and remanded. Thank you, Mr. Burton. Good morning. I respectfully request 30 seconds for rebuttal. I've been a file clerk for 31 years. In those 31 years, dealing with this case has been one of the hardest things I've had to deal with. The court in the summary judgment erred when it did not consider all the facts of my case. Number one, the fact that an African-American captain that stayed in my brief on page 14, who was sequestered on the test writing committee, was terminated when those tests were African-American, top-heavy. And that exam was thrown out. And in my case, a Caucasian captain who violated the sequester during appendix page 450 through 452 was briefly demoted and reinstated when those lists were top-heavy Caucasian. And that exam was allowed to go forward during appendix 453 through 456. None of the facts, the changing of the testing procedures, the deviations, during appendix 1710 through 11, the violation of the sequester, or the pattern of discrimination, as evidenced by the massive joint appendix, was taken into consideration by the court's decision. As stated in the case of Brady v. Officer Sargent, a plaintiff had multiple ways to cast doubt on the employee's assertion for reason but acting, such as an African-American captain in violation being terminated and a test thrown out, and a Caucasian captain in violation being briefly reprimanded, reinstated, and a test moving forward during appendix 450 and 1649. It is not fair that the facts weren't given any value. Number two, there were many errors stated by the court. The court even stated in joint appendix 1224, it was difficult in trying to organize the plaintiffs. And this difficulty caused errors. For example, the court gave a statistical breakdown for the captain's exam, but not myself, during appendix 1300. If a jury would see the statistical breakdown of myself, and the agency's own admission of discrimination, during appendix 633 to 654 in 1683, a jury would give summary judgment to me. Number three, the agency changed the promotions and mid-testing summary property from page three in joint appendix 342. The change was done when we used candidate ID numbers. The candidate ID numbers would keep everyone anonymous, but the change was to put us, make us write our names on the test. This fact was not appreciated by the court. This change allowed the agency to identify Caucasian members for promotion, during appendix 1971 through 2015. As stated in Brooks versus Boston, the court would consider all factors, promotion rates, pass-fail rates, average scores, and delays of promotion. Case law is on my side. As in the case of the Volk Society versus New York, this proves that widespread discrimination still exists. And per the reasons stated, the court's decision must be reversed, and summary judgment must be granted to myself. Thank you. Thank you, Ms. Nelson. Good morning, Your Honors. I've reserved two minutes for rebuttal. For the record, my name is Donna Rucker, and I represent three of the appellants in this case, Mr. Charles Florence, Mr. Daniel Botts, and Mr. Charles Rayford, who has filed this appeal because the trial court erred in granting summary judgment with respect to the specific claims. For purposes of this appeal, we rest upon the record that has been provided with respect to the briefs submitted, as well as to the deferred joint appendix and the supplemented deferred appendix. We assert, however, that the trial court erred for three basic reasons. When you look at the evidence of record and take into consideration the record as a whole, it is clear, when viewed in a light most favorable to the appellants, the trial court erred in making a determination that there was no existence of evidence to support an inference of discrimination based upon briefs. With respect to the particular appellant, Florence, the record is clear that, while I call him Appellant Florence, in this particular case, had been subjected to a trial board hearing as a result of an alleged claim of discrimination for sexual harassment. The record in this case shows that we provided a comparator, who is a white male, who, subsequent to the charges by Mr. Florence, actually was charged as well. However, in this case, if you look at the charges from the department for this particular event, which we allege would be more egregious, you don't have any mention of any violation of the D.C. Human Rights Act. That is pivotal. In this particular case with the Appellant Florence, the decision by the board was never officially issued. However, he was secreted in terms of being called by Chief Brian Lee to come to a meeting to discuss the impending presentation of a decision by the board. What is, I think, relevant, Your Honors, with respect to Lieutenant Florence, is that the court erred in making a determination that this particular white male, who was also a lieutenant, was not a proper comparator. Whether or not this person was a proper comparator, first of all, is evidence that should have been determined by a jury, because there is evidence that exists that they were similarly situated. You look specifically to the nature of the offense, as well as the penalty in this particular place. Notwithstanding the fact that you, we would argue, did not have evidence that would have warranted a violation of the D.C. Human Rights Act. We can't go back and re-litigate the trial board, but we can point out evidence of pretext, as well as evidence existing to infer discrimination, that the decision to not have this particular white lieutenant determined to have been in violation of the D.C. Human Rights Act, was not a proper comparator. The D.C. Human Rights Act was very important. As a matter of fact, as this record shows, when the lieutenant was told by the assistant chief that he would, in fact, face difficulty in working with others, and that it was in his best interest to retire, he took that advice, and therefore, it is our position that this was a coerced resignation, and therefore, a termination and an adverse action. With respect to the appellant, Botts, what you find in this particular record is that the trial court erred in making a determination that Mr. Botts had not, in fact, properly asserted triable facts for the court, in that Mr. Botts had not presented any information pertaining to his national registry training requirements. However, on this particular record, it is clear that what the appellant is articulating here is somewhat misrepresented in the order that is presented by the judge, because there isn't an allegation that there was no requirement, or that there was some exception that Mr. Botts was entitled to. What is argued in this particular case is that the national registry training, once it became required for individuals, if you were hired before a particular point, it did not entitle the department to terminate you if you were not successful. In this particular case, with respect to appellant Botts, what we're saying is if you decided that because of this new implementation that you want to have everyone go to the training academy, you should have had African Americans, and you should have had Caucasians present as well. The discrimination in this particular case is not in asking appellant Botts to attend the training for the national registry. It is being selective, and the disparate treatment that went into making a decision as to who would attend. We also argue that the court's analysis about whether or not there was, in fact, adverse action is misplaced, given the fact that on this record, the district clearly argued for what would be purported to be legitimate, non-discriminatory reasons for its actions. And therefore, the question is whether or not there's evidence of pretext. We believe on this record, with the presentation of the specific individuals who were identified by appellant Botts, in terms of who should have been at the training academy, the impact of the fact that he was there, which is loss of holiday pay, loss of overtime opportunity, loss of the ability to take a promotional exam. We have both prima facie evidence, as well as evidence of pretext. Was his evidence that there was disparate treatment, that he saw that there were no whites there? That is correct, Your Honor. Mr. Botts testified to that. And that goes to another point that is at issue in this particular case, when the judge concluded that his deposition testimony should not be credited. It is clear that deposition testimony is evidence that should have been considered by the court. And in looking at what was provided in this record and the light most favorable to Mr. Botts, he, in fact, should have been allowed to have his claims go forward. With respect to Mr. Rayford, there are two actions that he is talking about in his case. Specifically, Mr. Rayford is saying that, with respect to his suspension, the record is clear that acts and events such as minor traffic offenses would be normally dealt with at a battalion chief's conference. The discrimination, what we are alleging in terms of disparate treatment here, is the fact that, as it pertains to him, his matter went directly to a trial board. This is the evidence that exists with respect to the disparity report that is contained in this record, showing that there is an 80% plus disparity, which changes over time, but never diminishes or eliminates the fact that there is disparity in treatment with African Americans who are facing discipline within the D.C. Fire and EMS Department. With Mr. Rayford, he points out, with respect to his suspension, that there were many others. He talks in this record about the fact that there is a record that he observed where there were others who had similar minor offenses, but others with more severe offenses, yet their penalty would be a reprimand or counseling. With respect to his termination, while it is true that he failed the drug treatment program, the judge erred in deciding that he did not have an adverse action because of his resignation. Mr. Rayford, in this particular case, his argument is specifically that he didn't have the opportunity, as others, to not be in the program. I see my time has ended. I reserve the revolution. All right. Thank you. Thank you. Good morning. May it please the Court. My name is Donald Templin. I represent Appellate Adu. In this brief two minutes, I want to go straight to the issue of Mr. Adu's argument. Number one, I'd like to direct the Court's attention to the lower court judge's footnote 17, where the Court essentially minimized and negated the most compelling piece of evidence in this case, which is the chart that was submitted by the plaintiffs below, which indicated an 80% disparate treatment in terms of disciplinary actions, taken by, admittedly, submitted by the Fire Department at a City Council meeting and presentation, that shows that African Americans are institutionally treated, relative to discipline, six times more egregiously in terms of the punishments issued versus whites. And pertinent to Mr. Adu, as an anecdote, Mr. Adu, who missed three medical appointments, was suspended in each instance, whereas white comparators who had not submitted to these medical examinations Were any of them similarly situated to him? Well, Judge, they were arguably similarly situated to this extent, to the extent that the policy at issue was universally Well, why was he supposed to be going to the doctor? I'm sorry, Your Honor. Why was he supposed to be going to the medical court? These are the annual reviews He, he, your point That's correct. These are the annual It wasn't just an annual in his case, was it? The three were annual The other three were and he wasn't. He was a claimant, right? I'm sorry, Your Honor He was a claimant at that time, was he not? Yes, he was And they were annuals, right? I'm They were annual, right? No, his were also annual fitnesses, Your Honor No, his was for his claim No, they were fitness claims, fitness for duty claims They were part of the 103, we refer to that 103 in the deferred joint appendix Where he was also required to go for annual reviews Similar to those other captains Similar, your concept of similar is pretty broad, I think, yeah Well, the, the, the court, with all due respect, the, the policy And understanding the framework of the law, but the policy says that all And we point to the joint defunded, the joint deferred appendix All these employees are required to have these annual fitness reviews So to the extent that they are all required, they are all This is, this is, it is, it transcends the ranks of these employees Additionally, the inference here, the issue here relative to the institutional discrimination here Is there is, the court minimized the significance, evidentiary significance of that In her analysis, to the extent that you have the statistical chart Which is part of a government document We believe that the basis when it existed in trial for it to be self-authenticated With the proper certification, the court suggests that Mr. Lee Who was not part of the evidentiary submission to the city council Didn't recognize the document, is of no evidentiary moment Because he was not the person, it was the chief himself Who presented this particular evidence to the city council The statistics, the point being here in the limited time that I have Is that that statistical chart, if it were given the proper evidentiary significance Along with Mr. Adu's anecdotal comparisons Which we point out on pages four and five of our brief Along with the other evidentiary issues in terms of discrimination Against Mr. Adu would have resulted, we think, in a triable issue Where a jury, not a judge, should have made this particular decision Thank you Thank you, counsel Good morning Good morning  After four years of discovery and thousands of documents produced A bunch of depositions None of the six plaintiffs have been able to muster sufficient evidence To raise a question of fact with regard to discrimination in their particular case I'm going to start, because we have six different claims I'm going to start with the disciplinary cases and then move on to the others Unless this court wants me to start in a different place Let's start with Mr. Adu, since that's where we started That's where we left off As this court has mentioned, of course, there was different conduct for the comparator Mr. Adu was injured, he was on administrative leave Which meant he was getting paid to sit at home and heal And he had scheduled clinic appointments Which means time was set aside for him, he missed those appointments So the conduct was different So I was not missing something You used the case that it was a different kind of case than the annual review Absolutely, as opposed to a failure to schedule But also important, his Caucasian comparators were penalized more harshly than he was He was penalized for 12 hours for missing one clinic appointment And then when he missed two more within the next six weeks He was given another 24-hour suspension The comparators were given 300-hour suspensions So even if they were comparable misconduct, they were penalized more severely Finally, with regard to Mr. Adu It's important to note that the record demonstrates This first missed appointment was his fifth neglect of duty type charge In three years So he has not established, regardless of whether the department had an institutional issue With disparate statistics in regard to discipline He has not established that he personally suffered disparate treatment with regard to discipline Moving on to Mr. Florence Mr. Florence had different decision makers propose his demotion and suspension Than those that proposed the demotion of his comparator Why does that matter? Well, it's critically important Because the reason why the trial court was tolerant of the different decision makers With all of the other disciplinary actions Is because the decision finally at the end went to the fire chief And if you look at the record A lot of the suspensions that were proposed were cut down by the fire chief So that was the final decision maker Here, because he did not pursue an appeal with the fire chief We don't know what the final decision would have meant And it's entirely possible the fire chief, first of all Would have believed him instead of believing his accuser It was a he-said-she-said situation Or the fire chief might have said Oh, well this other guy was just demoted and not suspended So I'm just going to demote you and I'm going to reverse the suspension So that's important But it doesn't make it any less disparate It doesn't, but the question Are you arguing a failure to exhaust? No, no, not at all Indeed, yes we are arguing a failure to exhaust But that's a separate argument All you have is the comparison And the comparisons don't look good for you Well, the reason why the different decision makers Is considered a key factor in looking at similarly situated employees Is that the question is not whether He was treated differently than someone in another race In general This is not a disparate impact case The question is whether there was intentional discrimination And if you want to get into the mind of the decision maker If you have different decision makers They may see sexual harassment with different severity They may not have even known about the other fact The other case But even if they did They might have seen Maybe they thought the other case was... So you're saying the city can have A disciplinary system that results in whimsical Decision making And can never be called on it Merely because they're different boards Absolutely not I'm not understanding The bottom line with Florence and the comparatives Is they're quite different Yes, well I will say First of all There are other reasons why Florence doesn't have a claim But with regard to the similarly situated factors Of course There's a whole Office of Employee Appeals process To determine that the discipline was fair That it was appropriate But the question here is intentional racial discrimination And when it comes to that The good case The Seventh Circuit has a really nice description Of why all of these circumstances need to line up And that is to eliminate other possible explanatory variables For example Decision makers Different decision makers Which helps isolate the critical independent variable Which is discriminatory animus But I will also note Of course there's also a failure to exhaust issue here Because Mr. Florence did not suffer an adverse action He retired before the trial board's decision Even was formally issued His chief called him in Said trial board's about to issue this decision You have some choices to make And he chose to voluntarily retire He's shown no case where someone voluntarily retiring In lieu of a proposed demotion Where he didn't even appeal to the chief Somehow has an adverse action Again he may well have won If he'd gone to the chief Well if the chief is encouraging him to retire Why would he think he was going to win? I apologize There's the fire chief That's the big chief And then there's the assistant chief And you refer to them as Chief Lee But it was an assistant chief It was a lower level official that was speaking to him We're not talking about an appeal to the final chief Those are completely different people And in fact the chief The chief gave him an option And didn't pressure him to retire The assistant chief is the assistant chief Yes The assistant chief Lee is the one that met with him The ultimate fire chief head of the agency Is the one that makes the final decision I'll let you say something other than the chief If you're not talking about the chief I apologize You're correct That is a shorthand That definitely confuses the matters here So Mr. Florence didn't suffer an adverse action Even if he did He has not shown that it was due to any sort of discrimination Intentional discrimination Particular to him As to Mr. Burton He has not shown that there is any comparator Who engaged in the same sort of misconduct he engaged in And in fact the trial board directly addressed this comparator Because he raised the comparator before the trial board And they said that the comparator K.A. All he did was respond undispatched He saw a fire, he responded And then he informed the dispatch that he was doing so In comparison Mr. Burton forced the reorganization of a fire ground That had already been planned out By dispatching himself after he was directly ordered not to dispatch And then after that He did not follow standard operating procedures And according to the trial board Created a dangerous situation None of these factors are there for his comparator And then indeed the trial board noted also That Mr. Burton afterward refused to take responsibility Which meant he didn't learn from the problem And that's very different from his comparator Who apologized and said he would do things differently the next time I do want to briefly address this question Of whether Mr. Burton Whether another comparator was allowed to do overtime work While he was suspended If the court looks at J.A. 1768 and 1769 Those are the two pages that indicate the two weeks When comparator J.F. was suspended And on those two pages There is not a dot of overtime served He served overtime before his suspension He served overtime after his suspension But not during And even if you look at the very end of the suspension It looks like the very last day of that suspension He split his shift Which meant he was suspended for half of it And he worked the second half of it So that pretty much just answers that question One more disciplinary and I'll move on Mr. Rayford had two different disciplinary actions The first was suspension for getting into an accident While he was not carrying his driver's license After he had misled his supervisor Into believing that he was carrying his driver's license The record indicates that if he told his supervisor I don't know where my driver's license is The supervisor would have just put someone else in the driver's seat None of the comparators that he offers Have any of these factors relevant Or none of them are in the record at all And indeed he, as the district court noted, cherry-picked So the Caucasians who'd been in accidents And were only reprimanded I believe there were six of those Well there were 11 African-American firefighters Who'd been in accidents that were also reprimanded So there's simply no evidence of discriminatory animus here I will also note that the trial court there Gave him an enhanced penalty Because of his disciplinary record We don't have the disciplinary record of the comparators Now let's move on to his more pertinent claim His claim regarding his termination Now he was terminated for two different types of misconduct Number one, which was the automatic termination For testing positive for marijuana While he was in the substance abuse program And there is no evidence that any other comparator Tested positive for an illegal drug While in the substance abuse program We know that one other comparator Had a previous violation of the policy But we don't know when that was We don't know if he was in the substance abuse program More importantly, Mr. Rayford was also terminated For tampering with his urine sample For attempting to falsify his drug test results And he doesn't even mention that in his briefs So again, there's no evidence of disciplinary action Disparate disciplinary action I'm going to take a breath And move on to the issues that have been raised By Mr. Nelson and Mr. Votz Mr. Nelson had concerns about the promotional exam And he primarily focuses on this violation of a sequester The important fact in the evidence Is that the individual who violated the sequester Was not actually a test writer He was a member of the subject matter expert panel And according to the policy That panel was to After all the test questions were written Then they were given the test questions And they weighted them in a way That created a fair ranking Weighting of points for the scores So there's an affidavit in the record Which is cited in my brief Which indicates that at the time That he notified the department He violated the sequester And was removed from the team He had never had access to the exam It had not been written yet So that violation of the sequester Could not have had any impact on the exam Now there was somebody in 2000 An African-American member of the test writing team Who not only violated the sequester He created a cheat sheet And handed it out to the African-American members Of his team Because he wanted them to do better on the test And indeed he was terminated And the test was canceled at that time That has nothing to do with what happened here It has nothing to do with claims Of intentional race discrimination And finally with regard to Mr. Botts And the EMT training Regardless of what Mr. Botts saw While he was at the training center And he was not there the entire time The training center was open By December 2010 Nearly every employee in the department Was certified Half of the department is Caucasian So either they obtained their certification elsewhere And there's nothing discriminatory about that Or they were already certified Or they were at the training center At various times There certainly was no discriminatory application You're saying nearly everyone What about the whites who were not And his claim is He was made to go And they were not His claim is that They were I don't know whether there were a few people left over Who hadn't been certified How can you gloss over that? That's his claim We're talking about a dismissal Summary judgment of their contested facts He hasn't raised enough? No What does he have to do? He doesn't have the department records What else should he have done? He does have the department records There were four years of discovery All of this information was available to him He had every opportunity And he certainly hasn't shown that the handful of people That weren't certified were all Caucasian What we know is that there were a few people Who were still left off at the time That the records At least doesn't demonstrate that That almost everyone was certified All of his evidence That Caucasians were not required to satisfy the standard All of it is hearsay And in his reply brief What do you mean hearsay? You mean his observations are hearsay? No It is his personal testimony At deposition that someone told him There is some of that But there is also his testimony That he was at training sessions And made the claim That there were no whites there Yes, that is the only evidence he has That whites were not required They were certified The Caucasian members were certified Did the city show that in response? Yes The city has produced its records It's produced all of these records Everyone has been certified There might be a handful that weren't But it certainly There is no evidence that that has some sort of racial breakdown Yes, everyone was certified Everyone was required to do this He heard people Don't keep saying everyone I apologize Don't keep saying it wasn't everyone Certainly, but a jury would have to speculate on this evidence To find that the fact that a handful Of unspecified as far as to race As far as we know they were all African American As far as we know We just don't know And the plaintiffs have the burden of proof here They have the burden And there is no evidence of discriminatory animus I see my time is almost up I do want to mention With regard to both The promotional exam The EMT training And the hostile work environment claims That the plaintiffs have made no effort To argue or satisfy The Monell requirement To show that the district Had a policy or custom Of course The concerning statistics regarding racial disparity And discipline satisfy At least for purpose of summary judgment Monell with regard to the discipline cases But with regard to the promotional exam Or the EMT training There is no evidence Of a customer practice And the employees are not challenging the policy itself So for these reasons After all of this How do you account for the report? How should that fit? I'm sorry for my voice In the analysis This is the city's report That bad things were going on Yes and the plaintiffs are mistaken When they say that the district court Discounted that report And indeed the district has not argued That that report is inadmissible or irrelevant Those concerning numbers Got the employees past their prima facial hurdle It did in fact Raise an inference Of discrimination But you can't have an individual Discrimination claim without No no no I understand that I'm just asking you What your thoughts are on the report Because it's a damning report All I can work off of is the record And indeed the numbers are concerning And I'm working with the summary judgment record That I have Had the plaintiffs pursued a class action claim Or a policy or practice claim There would have been more discovery done There would have been experts And all we have are the wrong numbers At this point for policy and practice cases Which look to resolve institutional Or systemic problems With discrimination Then you bring in experts And then we would bring in our own experts And we would talk about what those numbers actually mean There is one thing I would like to say about those numbers Because of course they're worrisome But I would like to note that Contrary to what the plaintiffs claim In their reply brief There is no evidence of disproportionate discipline For same or similar offenses I believe that would be more troubling There's evidence that There were more disciplinary actions Taken against African Americans Than Caucasians And indeed that is concerning But there's no evidence that that was done For the same or similar offenses Now can I ask you Because I'm very curious about this too It's a strange report And it really is disturbing But how do you How have you gotten at This idea of whether It's disparate for the same or similar offenses In other words Are you saying there's no evidence Because the plaintiffs here Have not provided it That is exactly what I'm saying I have not done independent research into this There could be evidence of that It's just that we don't know Everything I'm dealing with here Is with what's in the record And because this case was brought And ended up being brought as individual discrimination cases That really wasn't explored Because the district was never going to contend In light of those reports That the plaintiffs hadn't satisfied their prima facie burden So then it became an individualized inquiry And it doesn't look like a lot of analysis Was done in that area Thank you Okay Let's see Let's see Mr. Burden You had reserved 30 seconds And also Mr. Nelson Your Honor Counsel got it wrong Firegrounds are restructured all the time I've been a member for 20 some years And they're restructured I'm faced with a citizen Pointing to where the house is on fire If had I not acted I could see I'd be facing my termination I was forced to act So as counsel said It wasn't Again we'll move on I didn't take responsibility Because there was a process in place When I CBA The city sent me to The first thing was the deputy's conference The deputy's up here He said I'm not putting a man on charge For putting out a fire He sent me below I went to the battalion conference They sent me to the same charging official Who ran the fireground Which is illegal Then from there Then they sent me to a trial board Facing a termination It's a violation of the city's own CBA That they agreed to As far as the overtime Counsel got it wrong again The overtime And again let me be clear It's on page 1768 1766 We worked two weeks And that two week period For the same pay period He worked overtime while suspended So the pages that counsel is talking about 1768 It's wrong 1765 and 1766 are the two week pay period He worked while he was suspended As far as the Refuse to take responsibility Again why am I going to take responsibility There's a process The CBA is covered by it I was forced to act For a citizen or for a visitor to the city I'm looking at a house that's on fire What do they want me to do We understand your argument Yes ma'am Thank you Counsel got it wrong About the subject matter experts The African American captain that was terminated And the white captain They were both on the subject matter Writing committee Which means you have an independent company That writes the exam But you have experts from the agency That have to give them material about that specific agency Both of these captains were on that committee My argument is this If any individual that's involved In the process Has one bit of information And if he gives that information To one person It violates the whole process So what happened in this case There was a Caucasian captain Who admittedly violated the process And the agency allowed him to do that Because the timeline that's in the Joint appendix Shows that the test process Was in April It didn't finish until July The subject matter expert, the captain The white captain He wasn't charged until after August The promotionalist comes out in the 15th I understand that I kicked the hornet's nest And that the agency had to cover that up But the comparatives Between the black captain and the white captain They both were on the same type of committee To give information For the test process And the violation Was clear and admitted by the agency And the damage was done One test was thrown out One test was allowed to go forward Through that massive joint appendix There's clear evidence That the agency allowed this to happen To cover its own tracks Because what I did Would have created a massive change But what's right is right What's wrong is wrong And I'm just saying the comparatives are there The evidence is there and the admission of the agency is there So I'm just saying that that should be A jury's decision To make The evidence is there The changing of the test The admitting of doing deposition Of members in the fire department That things weren't investigated When they were out there All these things are in that joint appendix As you can see it's three phone book size It's three phone book size The department admitting of discrimination Not only for the Disparity in treatment But the systematic part of it The part that means this The part that means that if I'm I'm sorry Let me slow down I will just say this Let me make it close The sergeants and lieutenants of today Become the captains and chiefs And policy makers of tomorrow That's important So to have that advantage To anybody Is wrong The process should be fair Thank you Thank you Mr. Nelson Alright You actually I think had no time left Okay I had none You had none but we will give you a moment One minute at least Thank you so much I appreciate that I want to address very quickly then The fact that with respect to Florence I think council is confusing Again the record With respect to how things work With respect to Lieutenant Florence's trial board Once the trial board decision Is concluded That decision is processed administratively It has already gone up to the fire chief The fire chief Who then decides whether that decision will go forward When assistant chief Lee Met with Lieutenant Florence It had already gone up to the fire chief Who had obviously approved it Which is why that discussion was occurring So it's incorrect to say that that was not A process that Lieutenant Florence used Whether or not he had the right To appeal the ultimate decision Of the trial board If he was terminated Would have taken it outside of the fire department To the D.C. Department of Employee Appeals It would not have even been reviewed By the D.C. Fire and EMS Department As to an incorrect termination With respect to the allegation that was Rayford What we are pointing out here is the distinction between The fact that Mr. Rayford Was put into the drug treatment program As our record shows Immediately upon testing positive We have evidence in this record of white individuals Who were driving under the influence Who were arrested For driving under the influence Those individuals were not immediately inserted Into the drug treatment program The significance of that is Especially as to one, the second offense Did not result in a termination As it did with Mr. Rayford This is the district treatment So when you talk about you don't have Anybody or any comparators With a similar record That's because they're not being disciplined We cannot stand before you and point out The specific and repeated violations Because they're not being disciplined That has the impact of having us Have to stand here and say Mr. Rayford may come to you with these two events But the question and the point is You can't have an individual A probationer from the evidence in this record Who gets no chances When you violate A rule or procedure within the department Has a DUI And is not fired That is an injustice That is a discrimination With respect to Mr. Botts The clear point that we're making here Is that As this court was saying Asking in terms of the questions to counsel It is not correct That there's no evidence here That others were treated differently It is absolutely correct that Mr. Botts pointed out In bringing this case Specific individuals He indicated Who was not down at the program He also pointed out Individuals, initials KC, JD And DF These are individuals Counsel has told you that at some point or another Everyone was certified Whether or not that is true Has nothing to do with the discrimination that existed When Mr. Botts and others Who are African American Were made to sit down at the national training For the national training And they were not allowed to leave They actually had penalties that existed Such as, because they were down there For example, Mr. Botts for two years Felt, okay, you can't fire him That's the rule Well, let's make it very uncomfortable Let's start making them come every day of the week And for anyone who's worked a shift Where you work one and you're off three That has a significant impact on life, on you All I'm saying is With this particular record It is not, as counsel has stated That there is the absence Or the lack of evidence in the record To show that there were specific individuals Who were treated more favorably That is in this record It does exist, and it is evidence of discrimination And a reasonable juror Had this case not been dismissed A reasonable jury could have concluded And inferred racial discrimination We ask that you reverse this matter And allow it to proceed on the merits Thank you, Ms. Rucker Thank you Based on what the district says If the report could be admitted For purposes of Excuse me, counsel Sorry We will give you Also one minute Thank you Based on what the district has stated It has conceded that the report The statistical report could be admitted For purposes of establishing Monell It is our contention that essentially This is a pretext case And in particular to Mr. Adu That along with the evidentiary significance And the emphasis that it should be created And Mr. Adu and other plaintiffs favored By virtue of that report And I would just footnote The problem with the report And it's indicated in this record Is that when the African Americans Experience discipline disproportionately The exponential implications And development of that discipline Penalize them because the next discipline Becomes more egregious and more egregious That could have been established at trial The other point though with Mr. Adu And I'll close at this point Is this notion that these missed medical appointments These missed medical appointments And the discipline that is imposed In page 5 we address that point White captives missed medical appointments And Mr. Adu By comparison Missed medical appointments He was suspended They were not Comfortably situated And the other people got disciplined worse than him What are you trying to prove? Well the latter point your honor With all due respect they were not disciplined worse than him They were Disciplined Disproportionately less than him And we point that out on page 5 Of our brief when we talk about those numbers And so I think the record Clarifies that that's not an accurate The record shows that they were Differently situated than him And what is your point on How are you saying they were Disciplined worse than him They were disciplined worse than him Because he was disciplined for example your honor 84 hours in one suspension Some of these individuals Didn't have medical appointments for 7 years If you were disciplined How many, how long Did they get The hours would be 300 to 580 hours Several times as great as what he got I'm sorry your honor Several times as great as what he got right Well not really Okay Other than mathematically there's no other way To do that Mathematically they got more than he did Well we point out the disparity It depends on how one applies the math But we distinguish that your honor on page 13 of our brief Thank you Okay Thank you very much
judges: Brown, Edwards, Sentelle